1    Jonathan A. Stieglitz, Esq.
**THE LAW OFFICES OF JONATHAN A. STIEGLITZ**
2    11845 W. Olympic Blvd., Ste. 800
Los Angeles, California 90064
3    Telephone: (323) 979-2063
Facsimile: (323) 488-6748
4    *Attorneys for Plaintiff*

5

6                    **UNITED STATES DISTRICT COURT**

7                    **NORTHERN DISTRICT OF CALIFORNIA**

8

9    BRUCE BEGG, on behalf of himself and all        )    Case No.
others similarly situated,                          )
10                              Plaintiff,           )    **CLASS ACTION COMPLAINT**
                                                     )
11           vs.                                     )    **JURY TRIAL DEMANDED**
                                                     )
12    SEE, INC.,                                     )
                                                     )
13                              Defendants.          )
     _____        )

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---
                         CLASS ACTION COMPLAINT

## INTRODUCTION

1.      Plaintiff BRUCE BEGG ("Plaintiff"), on behalf of himself and others similarly situated, asserts the following claims against SEE, INC. ("Defendant") as follows.

2.      Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.1 million who are blind. According to the American Foundation for the Blind's 2017 report, approximately 786,000 visually impaired persons live in the State of California.

3.      "Being unable to access website puts individuals at a great disadvantage in today's society, which is driven by a dynamic electronic marketplace and unprecedented access to information." U.S. Dep't of Justice, Statement of Eve L. Hill before the Senate Comm. on Health, Educ., Labor & Pensions, at 3 (May 14, 2013).

4.      Plaintiff is a blind, visually impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

5.      Plaintiff requires screen-reading software to read website content using his computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.

6.      Plaintiff, individually and on behalf of those similarly situated persons (hereafter "Class Members"), bring this Class Action to secure redress against Defendant SEE, INC. ("Defendant"), for its failure to design, construct, maintain, and operate its website to be fully and equally accessible to and independently usable by Plaintiff and other blind or visually-impaired people. Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered thereby and in conjunction with its physical locations, is a violation of Plaintiffs' rights under the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("UCRA").

7.      Plaintiff brings this civil rights action against Defendant to enforce Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("Title III"), which requires, among other

CLASS ACTION COMPLAINT

things, that a public accommodation (1) not deny persons with disabilities the benefits of its services, facilities, privileges and advantages; (2) provide such persons with benefits that are equal to those provided to nondisabled persons; (3) provide auxiliary aids and services—including electronic services for use with a computer screen reading program—where necessary to ensure effective communication with individuals with a visual disability, and to ensure that such persons are not excluded, denied services, segregated or otherwise treated differently than sighted individuals; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to online content.

8.    Because Defendant's website, www.seeeyewear.com, (the "Website"), is not fully or equally accessible to blind and visually-impaired consumers in violation of the ADA, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

(a)    that SEE, INC. retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its Website so the goods and services on them may be equally accessed and enjoyed by individuals with vision related disabilities;

(b)    that SEE, INC. work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis, including onsite training to create accessible content at the design and development stages;

(c)    that SEE, INC. work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether SEE, INC.'s Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

(d)    that SEE, INC. work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether SEE, INC.'s Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

CLASS ACTION COMPLAINT

(e)     that SEE, INC. work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and tollfree phone number to report accessibility-related problems; and

(f)     that Plaintiff, their counsel and its experts monitor Defendant's Website for up to two years after the Mutually Agreed Upon Consultant validates it is free of accessibility errors/violations to ensure SEE, INC. has adopted and implemented adequate accessibility policies.

9.     Web-based technologies have features and content that are modified on a daily, and in some instances, an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

**THE PARTIES**

10.     Plaintiff, at all relevant times, is and was a resident of Alameda County, California. Plaintiff is a legally blind, visually impaired handicapped person, and member of a protected class of individuals under the ADA, pursuant to 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq.

11.     Defendant is and was at all relevant times a Michigan Corporation doing business in San Francisco County, at 651 Market Street, San Francisco, California 94105. Defendant's servers for the website are in the United States. Defendant conducts a large amount of its business in California, and the United States as a whole. Defendant's stores are public accommodations within the definition Title III of the ADA, 42 U.S.C. §12181(7). Defendant's Website is a service, privilege, or advantage of its services, products and locations.

**JURISDICTION AND VENUE**

12.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12188. This Court has subject matter jurisdiction over the state law claims alleged in this Complaint pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2)(A) because: (a) the

1  matter in controversy exceeds the sum of $5 million, exclusive of interest and costs; and (b) some of

2  the class members are citizens of a state that is different from the state of citizenship of Defendant.

3      13.    Defendant is subject to personal jurisdiction in this District. Defendant has been and

4  is committing the acts or omissions alleged herein in the Northern District of California that caused

5  injury and violated rights the ADA and UCRA prescribe to Plaintiff and to other blind and other

6  visually impaired consumers. A substantial part of the acts and omissions giving rise to Plaintiff's

7  claims occurred in the in this District: on several separate occasions, Plaintiff has been denied the full

8  use and enjoyment of the facilities, goods and services of Defendant's physical locations and/or

9  Website in Alameda County. These access barriers that Plaintiff encountered have caused a denial of

10  Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis

11  from visiting Defendant's brick-and mortar physical locations, which Plaintiff intends to do once the

12  Website is accessible to all. Similarly, the access barriers Plaintiff has encountered on Defendant's

13  website have impeded Plaintiffs' full and equal enjoyment of goods and services offered at

14  Defendant's brick-and mortar stores.

15      14.    This Court also has personal jurisdiction over Defendant because it conducts and

16  continues to conduct a substantial and significant amount of business in the State of California,

17  County of Alameda, and because Defendant's offending website is available across California.

18      15.    Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2) because Defendant

19  conducts and continues to conduct a substantial and significant amount of business in this District,

20  Defendant is subject to personal jurisdiction in this District, and a substantial portion of the conduct

21  complained of herein occurred in this District.

22      16.    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201

23  and 2202.

24  **NATURE OF ACTION**

25      17.    The Internet has become a significant source of information, a portal, and a tool for

26  conducting business, doing everyday activities such as shopping, learning, banking, researching, as

27  well as many other activities for sighted, blind and visually impaired persons alike.

28

- 4 -

CLASS ACTION COMPLAINT

18.    In today's tech-savvy world, blind and visually impaired people have the ability to access website using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually impaired person may independently access the internet. Unless websites are designed to be read by screen-reading software, blind and visually impaired persons are unable to fully access websites, and the information, products, goods and services contained thereon.

19.    Blind and visually impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. One such program is NonVisual Desktop Access, better known as "NVDA."

20.    For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the visually impaired user is unable to access the same content available to sighted users.

21.    The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making website accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure their website are accessible.

22.    Within this context, the Ninth Circuit has recognized the viability of ADA claims against commercial website owners/operators with regard to the accessibility of such websites. *Robles v. Domino's Pizza, LLC*, Docket No. 55504 (9th Cir. Apr 13, 2017), Court Docket No. BL-66.  This is in addition to the numerous courts that already recognized such application.

23.    Each of Defendant's violations of the Americans with Disabilities Act is likewise a violation of the Unruh Civil Rights Act.  Indeed, the Unruh Civil Rights Act provides that any violation of the ADA constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code, § 51(f).

24.     Further, Defendant's actions and inactions denied Plaintiff full and equal access to their accommodations, facilities, and services. A substantial motivating factor for Defendant to deny Plaintiff access was the perception of Plaintiff's disability. Defendant's denial of Plaintiff's accessibility was a substantial motivating factor for Defendant's conduct. Plaintiff was harmed due to Defendant's conduct.  Defendant's actions and inactions were a substantial factor in causing the lack of access to Plaintiff.  Unruh Civil Rights Act. Cal. Civ. Code, § 51.

## STATEMENT OF FACTS

25.     Defendant is an eyeglass and sunglass company that offers the www.seeeyewear.com website to the public. The Website offers features which should allow all consumers to access the goods and services offered in connection with its physical locations. The goods and services offered by Defendant include, but are not limited to the following: products such as men's and women's eyeglasses, sunglasses, and single vision lenses; services such as the ability to: find store locations, access information about order status, returns, discounts, and shipping information.

26.     It is, upon information and belief, Defendant's policy and practice to deny Plaintiff, along with other blind or visually impaired users, access to Defendant's Website, and to therefore specifically deny the goods and services that are offered and integrated with Defendant's stores. Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiff and visually impaired persons have been and are still being denied equal access to Defendant's stores and the numerous goods, services and benefits offered to the public through its Website.

27.     Plaintiff is a visually impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient NVDA screen-reader user and uses it to access the Internet.

28.     During Plaintiff's visits to the Website, the last occurring in January of 2020, Plaintiff encountered multiple access barriers that denied him full and equal access to the facilities, goods and services offered by Defendant to the public. Plaintiff was thus unable to: learn about store locations and hours and contact information; make an online purchase, determine prices for and availability of certain products, and related goods and services available both online and in stores.

CLASS ACTION COMPLAINT

29.    Due to Defendant's failure to build its Website in a manner that is compatible with screen reader programs, Plaintiff is and was unable to understand, and thus is denied the benefit of, much of the content and services he wishes to access or use. For example:

(a)    Many features on the Website lacks alt. text, which is the invisible code embedded beneath a graphical image. As a result, Plaintiff was unable to differentiate what products were on the screen due to the failure of the Website to adequately describe its content.

(b)    Many features on the Website also fail to Add a label element or title attribute for each field. This is a problem for the visually impaired because the screen reader fails to communicate the purpose of the page element. It also leads to the user not being able to understand what he or she is expected to insert into the subject field.

(c)    The Website also contains a host of broken links, which is a hyperlink to a non-existent or empty webpage. For the visually impaired this is especially paralyzing due to the inability to navigate or otherwise determine where one is on the website once a broken link is encountered.

30.    As a result of visiting Defendant's Website and from investigations performed on his behalf, Plaintiff is aware that the Website includes at least the following additional barriers blocking his full and equal use:

(a)    The Website does not provide a text equivalent for every non-text element;

(b)    The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

(c)    Web pages lack titles that describe their topic or purpose;

(d)    Headings and labels do not describe topic or purpose;

(e)    Keyboard user interfaces lack a mode of operation where the keyboard focus indicator is visible;

(f)    The default human language of each web page cannot be programmatically determined;

(g)    The human language of each passage or phrase in the content cannot be programmatically determined;

CLASS ACTION COMPLAINT

(h)     Labels or instructions are not always provided when content requires user input;

(i)     Text cannot be resized up to 200 percent without assistive technology so that it may still be viewed without loss of content or functionality;

(j)     A mechanism is not always available to bypass blocks of content that are repeated on multiple web pages;

(k)     A correct reading sequence is not provided on pages where the sequence in which content is presented affects its meaning;

(l)     In content implemented using markup languages, elements do not always have complete start and end tags, are not nested according to their specifications, may contain duplicate attributes, and IDs are not always unique; and

(m)     The name and role of all UI elements cannot be programmatically determined; things that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

31.     Due to the inaccessibility of Defendant's Website, blind and visually impaired individuals such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, products, and services Defendant offers to the public through its Website. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from visiting the Website in order to perform functions equal to the sighted.

32.     If the Website were equally accessible to all, Plaintiff could independently navigate the Website and complete a desired transaction as sighted individuals do. In fact, Plaintiff intends to return to the Website when it is equally accessible for visually-impaired consumers in order to complete his intended transaction, as it is more convenient for Plaintiff to access the Website to make a purchase than to travel to a physical location to make the same purchase. However, as long as the Access Barriers continue to exist on the Website, Plaintiff is prevented from making such a purchase.

33.     These barriers, and others, deny Plaintiff full and equal access to all of the services the Website offers, and now deter him from attempting to use the Website and/or visit Defendant physical

1  stores. Still, Plaintiff would like to, and intends to, attempt to access Defendant's Website in the future

2  to research the services the Website offers, or to test the Website for compliance with the ADA.

3          34.    Due to Defendant's failure and refusal to remove access barriers to its Website,

4  Plaintiff and visually impaired persons have been and are still being denied equal access to its stores,

5  and the numerous goods and services and benefits offered to the public through its Website.

6          35.    Through his attempts to use the Website, Plaintiff has actual knowledge of the access

7  barriers that make these services inaccessible and independently unusable by blind and visually

8  impaired people.

9          36.    Though Defendant may have centralized policies regarding the maintenance and

10  operation of its Website, upon and information and belief, Defendant has never had a plan or policy

11  that is reasonably calculated to make its Website fully accessible to, and independently usable by,

12  individuals with vision related disabilities. As a result, the complained of access barriers are

13  permanent in nature and likely to persist.

14          37.    The law requires that Defendant reasonably accommodate Plaintiff's disabilities by

15  removing these existing access barriers. Removal of the barriers identified above is readily achievable

16  and may be carried out without much difficulty or expense.

17          38.    Plaintiff's above request for injunctive relief is consistent with the work performed by

18  the United States Department of Justice, Department of Transportation, and U.S. Architectural and

19  Transportation Barriers Compliance Board (the "Access Board"), all of whom have relied upon or

20  mandated that the public-facing pages of website complies with an international compliance standard

21  known as Web Content Accessibility Guidelines version 2.1 AA ("WCAG 2.1 AA"), which is

22  published by an independent third party known as the Worldwide Web Consortium ("W3C").

23          39.    Plaintiff and the Class have been, and in the absence of an injunction will continue to

24  be, injured by Defendant's failure to provide its online content and services in a manner that is

25  compatible with screen reader technology.

26          40.    Defendant has long known that screen reader technology is necessary for individuals

27  with visual disabilities to access its online content and services, and that it is legally responsible for

28  providing the same in a manner that is compatible with these auxiliary aids.

41.    Indeed, the Disability Rights Section of the DOJ reaffirmed in a 2015 Statement of Interest before the United States District Court for the District of Massachusetts that it has been a "longstanding position" of the Department of Justice "that the ADA applies to website of public accommodations." See Na*tional Association of the Deaf v. Massachusetts Institute of Technology*, No. 3:15-cv-300024-MGM, DOJ Statement of Interest in Opp. To Motion to Dismiss or Stay, Doc. 34, p. 4 (D. Mass. Jun. 25, 2015) ("MIT Statement of Interest"); see also *National Association of the Deaf. v. Harvard University*, No. 3:15-cv-30023-MGM, DOJ Statement of Interest of the United States of America, Doc. 33, p.4 (D. Mass. Jun. 25, 2015) ("Harvard Statement of Interest").

42.    The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

43.    In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . . 42 U.S.C. § 12188(a)(2).

44.    There is no DOJ administrative proceeding that could provide Plaintiff with Title III injunctive relief.

45.    While DOJ has rulemaking authority and can bring enforcement actions in court, Congress has not authorized it to provide an adjudicative administrative process to provide Plaintiff with relief.

46.    Plaintiff alleges violations of existing and longstanding statutory and regulatory requirements to provide auxiliary aids or services necessary to ensure effective communication, and courts routinely decide these types of matters.

47.    Resolution of Plaintiff's claims does not require the Court to unravel intricate, technical facts, but rather involves consideration of facts within the conventional competence of the courts, e.g. (a) whether Defendant offers content and services on its Website, and (b) whether Plaintiff can access the content and services.

48.    Without injunctive relief, Plaintiff and other visually impaired consumers will continue to be unable to independently use the Website, thereby violating their rights.

## CLASS ACTION ALLEGATIONS

49.    Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

50.    Common questions of law and fact exist amongst the Class, including:

(a)    Whether Defendant's Website is a "public accommodation" under the ADA;

(b)    Whether Defendant's Website denies the full and equal enjoyment of its products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, thereby violating the ADA.

51.    Plaintiff's claims are typical of the Class. The Class, like Plaintiff, are visually impaired or otherwise blind, and claim that Defendant has violated the ADA by failing to remove access barriers on its Website so it can be independently accessible to the Class.

52.    Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members.

53.    Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to the Class as a whole.

54.    Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

55.    Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits throughout the United States.

**FIRST CAUSE OF ACTION**

**Violations of the ADA, 42 U.S.C. § 12181 *et seq.***

56.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

57.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

58.    No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

59.    Defendant's physical locations are a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). The Website is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

60.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

61.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

62.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

63.    [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities,

- 12 -

1  privileges, advantages or accommodations; and a failure to take such steps as may be necessary to

2  ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated

3  differently than other individuals because of the absence of auxiliary aids and services, unless the

4  entity can demonstrate that taking such steps would fundamentally alter the nature of the good,

5  service, facility, privilege, advantage, or accommodation being offered or would result in an undue

6  burden.  42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

7        64.  The acts alleged herein constitute violations of Title III of the ADA, and the

8  regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under

9  the ADA, has a physical disability that substantially limits the major life activity of sight within the

10  meaning of 42 U.S.C. § 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal

11  access to the Website, has not been provided services that are provided to other patrons who are not

12  disabled, and has not been provided any reasonable accommodation to those services. Defendant has

13  failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations

14  are ongoing.

15        65.  Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and

16  incorporated therein, Plaintiff, requests relief as set forth below.

17                                    **SECOND CAUSE OF ACTION**

18           **Violations of the Unruh Civil Rights Act, California Civil Code § 51 et seq.**

19        66.  Plaintiff, on behalf of himself and the Class Members, repeats and realleges every

20  allegation of the preceding paragraphs as if fully set forth herein.

21        67.  Defendant's locations are "business establishments" within the meaning of the

22  California Civil Code § 51 et seq.  Defendant generates millions of dollars in revenue from the sale

23  of its services in California through its store's locations and related services and

24  www.seeeyewear.com is a service provided by Defendant that is inaccessible to customers who are

25  visually-impaired like Plaintiff and Class Members. This inaccessibility denies visually-impaired

26  customers full and equal access to Defendant's facilities and services that Defendant makes available

27  to the non-disabled public. Defendant is violating the Unruh Civil Rights Act, California Civil Code

28

§ 51 et seq., in that Defendant is denying visually impaired customers the services provided by www.seeeyewear.com. These violations are ongoing.

68.    Defendant's actions constitute intentional discrimination against Plaintiff and Class Members on the basis of a disability in violation of the Unruh Civil Rights Act, Cal. Civil Code § 51 et seq. in that: Defendant has constructed a website that is inaccessible to Plaintiff and Class Members; maintains the website in this inaccessible form; and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

69.    Defendant is also violating the Unruh Civil Rights Act, California Civil Code § 51 et seq. in that the conduct alleged herein likewise constitutes a violation of various provisions of the ADA, 42 U.S.C. § 12101 et seq. Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

70.    The actions of Defendant were and are in violation of the Unruh Civil Rights Act, California Civil Code § 51 et seq., and, therefore, Plaintiff and Class Members are entitled to injunctive relief remedying the discrimination.

71.    Plaintiff and Class Members are also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense.

72.    Plaintiff and Class Members are also entitled to reasonable attorneys' fees and costs.

73.    Plaintiff and Class Members are also entitled to a preliminary and permanent injunction enjoining Defendant from violating the Unruh Civil Rights Act, California Civil Code § 51 et seq., and requiring Defendant to take the steps necessary to make www.seeeyewear.com readily accessible to and usable by visually-impaired individuals.

## THIRD CAUSE OF ACTION

### DECLARATORY RELIEF

74.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

75.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers

- 14 -

1    denying blind customers the full and equal access to the products, services and facilities of its

2    Website, which Defendant owns, operations and controls, fails to comply with applicable laws

3    including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et*

4    *seq*. prohibiting discrimination against the blind.

5        76.     A judicial declaration is necessary and appropriate at this time in order that each of the

6    parties may know their respective rights and duties and act accordingly.

7                                    **PRAYER FOR RELIEF**

8    WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

9        1.     A Declaratory Judgment that at the commencement of this action SEE, INC. was in

10   violation of the specific requirements of Title III of the ADA described above, and the relevant

11   implementing regulations of the ADA, in that SEE, INC. took no action that was reasonably

12   calculated to ensure that its Website is fully accessible to, and independently usable by, individuals

13   with visual disabilities;

14       2.     A preliminary and permanent injunction pursuant to 42 U.S.C. § 12188(a)(1) and (2)

15   and section 52.1 of the California Civil Code enjoining Defendant from violating the Unruh Civil

16   Rights Act and ADA and requiring Defendant to take the steps necessary to make

17   https://www.seeeyewear.com readily accessible to and usable by visually-impaired individuals;  An

18   award of costs and expenses of this action;

19       3.     An award of statutory minimum damages of $4,000 per offense per person pursuant

20   to section 52(a) of the California Civil Code.

21       4.     For attorneys' fees and expenses pursuant to California Civil Code §§ 52(a), 52.1(h),

22   and 42 U.S.C. § 12205; An order certifying the Class under Fed. R. Civ. P. 23(a) & (b)(2) and/or

23   (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel; and

24       5.     Such other and further relief as this Court deems just and proper.

25

26

27

28

CLASS ACTION COMPLAINT

1

## JURY DEMAND

2    Plaintiff, on behalf of himself and all others similarly situated, hereby demands a jury trial for

3    all claims so triable.

4    Dated: May 8, 2020                    Respectfully Submitted,

5
                                          THE LAW OFFICES OF JONATHAN A.
6                                         STIEGLITZ

7

8                                         */s/ Jonathan A. Stieglitz*
                                          JONATHAN A. STIEGLITZ
9                                         11845 W. Olympic Blvd., Ste. 800
                                          Los Angeles, California 90064
10                                        Telephone: (323) 979-2063
                                          Facsimile: (323) 488-6748
11
                                          **PRO HAC VICE MOTION TO BE FILED**
12                                        Yitzchak Zelman, Esq.
                                          Marcus & Zelman, LLC
13                                        701 Cookman Avenue, Suite 300
                                          Asbury Park, NJ 07712
14                                        Office:    (732) 695-3282
                                          Fax:       (732) 298-6256
15                                        Email:     yzelman@MarcusZelman.com
                                          Website:  www.MarcusZelman.com
16
                                          *Attorneys for Plaintiff*
17

18

19

20

21

22

23

24

25

26

27

28